UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:14-cv-00498-MOC

| | |
|---|---|
| **ALEKSANDR S. MYALIK,** ) | |
| ) | |
| Plaintiff, ) | **MEMORANDUM OF DECISION** |
| ) | **and** |
| Vs. ) | **ORDER** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the court on the parties' cross motions for Summary Judgment. (##8, 17). Having carefully considered such motions and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.     Administrative History**

Plaintiff Aleksandr S. Myalik applied for Disability Insurance Benefits on April 4, 2011, alleging that he became disabled and unable to work on September 16, 2009 (Tr. 20, 145-151). After denial of his application initially and upon reconsideration, Plaintiff filed a request for a hearing before an Administrative Law Judge. (Tr. 102-103). Administrative Law Judge Todd D. Jacobson (the "ALJ") held a hearing on April 24, 2013 for consideration of Plaintiff's claims. (Tr. 32-64). On May 16, 2013, the ALJ, upon consideration of the entire record, issued his decision that Plaintiff was not disabled within the meaning of the Act. (Tr. 17-27). On July 12, 2014, the Appeals Council denied Plaintiff's request for review (Tr. 1-6), making the ALJ's

1

decision the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, Plaintiff timely filed this action.

## II. Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays, 907 F.2d at 1456.

The Fourth Circuit has articulated the following standard relevant to substantial evidence review:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for

> the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

When considering cross-motions for summary judgment, the court "examines each motion separately, employing the familiar standard under [Fed. R. Civ. P. 56]." Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351 (4th Cir. 2011); Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (the Court reviews each motion separately on its own merits in order to "determine whether either party deserves judgment as a matter of law") (internal citations omitted).

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits in the administrative record. The issue is not whether the court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. For the reasons explained herein, the court finds that it is not.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

a.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b.  An individual who does not have a "severe impairment" will not be found to be disabled;

3

c.  If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d.  If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e.  If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b)-(f). The burden of production during the first four steps of the inquiry rests on the claimant. Pass v. Charter, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. In this case, the Commissioner determined Plaintiff's claim at the fifth step of the sequential evaluation process.

**C. The Administrative Decision**

With an alleged onset date of September 16, 2009, the issues before the ALJ were whether Plaintiff was disabled between that date through the date of decision, and whether the insured status requirements were met. (Tr. 20). At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date and that he met the insured status requirements for Title II benefits through December 31, 2014. (Tr. 22). At Step Two, the ALJ determined that Plaintiff had the severe impairments of obesity and herniated discs with degenerative joint disease. Id. The ALJ found at Step Three that Plaintiff did not meet a disability listing. (Tr. 23). At Step Four, the ALJ found that Plaintiff had the residual functioning capacity ("RFC") "to perform light work as defined in 20 CFR 404.1567(b) except: he must alternate between sitting and standing after 30 minutes of work; he can occasionally climb, balance, stoop, crouch, kneel and crawl; he should avoid concentrated exposure to hazards such

4

as moving machinery or unprotected heights; and he is further limited to semi-skilled work." Id. At Step Five, the ALJ determined that Plaintiff was incapable of performing past relevant work as a truck driver, but that he was not disabled because he could perform the jobs of laundry worker, inspector/hand packager, and cashier II. (Tr. 26). The ALJ also found that if Plaintiff were further limited to lifting no more than 10 pounds, he could perform the jobs of cashier II, nut and bolt assembler, and bench assembler, but that such limitation was not fully supported by the objective medical evidence as a whole. (Tr. 27).

### D. Discussion

#### 1. *Plaintiff's Assignments of Error*

Plaintiff seeks review of the Commissioner's final administrative decision, alleging that: 1) the ALJ did not adequately explain his reasoning for finding that claimant does not meet or equal the criteria of Section 1.04 of the Listings; 2) the ALJ rejected medical opinion evidence without stating good reasons for doing so; 3) the ALJ did not discuss or give weight to the opinion of the vocational expert; and 4) the ALJ failed to properly evaluate pain testimony. For the reasons explained herein, the court finds that remand is appropriate based on Plaintiff's first assignment of error.

#### 2. *First Assignment of Error: Inadequate Explanation of Listing 1.04*

Plaintiff alleges that the ALJ failed to adequately explain his reasoning for finding that Plaintiff did not meet or equal the criteria of any physical listing at Step Three.

An ALJ has a duty to explain the administrative decision so as to enable meaningful judicial review. Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987); Gordon v. Schweiker, 725 F.2d 231 (4th Cir.1984). An ALJ's decision is not supported by substantial evidence unless the ALJ "has analyzed all evidence and has sufficiently explained the weight he has given to

5

obviously probative exhibits." Gordon, 725 F.2d at 236. "Failure to sufficiently address a relevant listing is ground for remand." Drotar v. Colvin, No. 7:13-CV-265-FL, 2015 WL 965626, at *4 (E.D.N.C. Mar. 4, 2015) (citing Cook v. Heckler, 783 F.3d 1168 (4th Cir. 2013)). The ALJ must identify the relevant listed impairments and compare each of the listed criteria to the evidence of the claimant's symptoms so that a reviewing court may assess whether substantial evidence supports the determination. Id.

Here, the ALJ failed to adequately explain why Plaintiff did not meet or medically equal any of the physical listings in 20 C.F.R § 404, Appendix 1 to Subpart P. The regulations provide a "Listing of Impairments" that are deemed sufficiently severe to prevent a person from any gainful activity, regardless of age, education, or work experience. See 20 C.F.R. § 404.1525(a). A claimant will be found disabled if his impairments meet the duration requirement and meet or equal the medical criteria of a listing. Id. § 404.1520(d).

In light of the facts and legal issues presented in this case, the court finds the Fourth Circuit's decision in Radford v. Colvin, 734 F.3d 288, 290 (4th Cir. 2013) particularly instructive. In Radford, the Circuit affirmed the district court's finding that an ALJ's explanation was insufficient as to why the claimant did not meet Listing 1.04A. See id. at 290. In Radford, the only basis that the ALJ provided for concluding that claimant did not meet such listing was a statement that the ALJ had "'considered, in particular,' the listing [ ] ... and had noted that state medical examiners had also 'concluded after reviewing the evidence that no listing [was] met or equaled.'" Id. at 292. The Circuit found the ALJ's decision "devoid of reasoning," noting that "[a] full explanation by the ALJ is particularly important in this case because [the claimant's] medical record includes a fair amount of evidence supportive of his claim," and that "there is probative evidence strongly suggesting that [the claimant] meets or equals Listing 1.04A." Id. at

6

295. In <u>Radford</u>, because the ALJ's analysis of Listing 1.04A was insufficient, it was "impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." <u>Id.</u>

The facts in this case are quite similar. Here, at Step Three, the ALJ simply stated:

> The claimant's impairments do not manifest the signs, symptoms, and findings required to meet or medically equal any of the physical listings in 20 C.F.R. § 404, Appendix 1 to Subpart P. This finding is consistent with that of the State agency medical consultants who found that no listing was met or equaled, and no medical evidence has been submitted at the hearing level that would alter this conclusion.

(Tr. 23). As is obvious by the summary manner in which the ALJ addressed the listings, the ALJ's explanation fails to explicitly consider any of the physical impairments under the Listings. Of particular concern in this case is the ALJ's failure to analyze Listing 1.04A, which applies to disorders of the spine. <u>See</u> 20 C.F.R. Part 404, Subpart P, App'x 1, § 1.04A. The listing specifically includes conditions such as "spinal stenosis" and "degenerative disc disease." <u>Id.</u> "A claimant is entitled to a conclusive presumption that he is disabled if he can show that this disorder results in compromise of a nerve root or the spinal cord." <u>Radford</u>, 734 F.3d at 291 (citing 20 C.F.R. § Part 404, Subpart P, App'x 1, § 1.04A). The listing describes the criteria a claimant must meet or equal to merit this conclusive presumption of disability:

> evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)

20 C.F.R. Part 404, Subpart P, App'x 1, § 1.04A. Listing 1.04A "requires a claimant to show only ... that each of the symptoms are present, and that the claimant has suffered or can be expected to suffer from nerve root compression continuously for at least 12 months." <u>Radford</u>, 734 F.3d at 294.

In this case, the ALJ failed to explain why Plaintiff did not meet Listing 1.04A, which is particularly troubling in light of the fact that the ALJ expressly identified herniated discs with degenerative joint disease as one of Plaintiff's two severe impairments. (Tr. 22). The ALJ also recognized that Plaintiff has a history of low back pain and that an October 2009 MRI exam revealed moderate broad disc herniation at L4-L5, herniation at L5-S1, and slight degenerative facet joint disease of the lumbar spine. (Tr. 22; 248-50). Additional evidence in the record shows that Plaintiff suffered from disorders of the spine, including midline disc herniation, spinal stenosis, and nerve compression and irritation. (Tr. 250, 275). The record also references back, hip, and leg pain, which may correspond to neuro-anatomic distribution of pain. (Tr. 248, 286, 315). It also includes evidence of limited spinal motion, (Tr. 294, 309, 352), and instances of motor, reflex and sensory loss. (Tr. 352-53). Finally, plaintiff had positive straight leg tests. (Tr. 248; 309). This record thus contains ample evidence to support a finding that Plaintiff's condition met or equaled Listing 1.04A. Because the ALJ did not address such evidence in his consideration of the listings, the ALJ did not satisfy the requirement to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8P (S.S.A. July 2, 1996). See also Radford, 734 F.3d at 295; Cook, 783 F.2d at 1172. The court thus finds that the ALJ's lack of explanation merits remand. See Drotar v. Colvin, No. 7:13-CV-265-FL, 2015 WL 965626, at *2, 5 (E.D.N.C. Mar. 4, 2015) (remanding where claimant had a severe impairment of degenerative disc disease and the ALJ failed to sufficiently address Listing 1.04A).

The Commissioner argues that Plaintiff failed to establish that he satisfied all of the criteria of Listing 1.04. However, at this stage, the court reviews only whether the ALJ's decision is supported by substantial evidence, Craig, 76 F.3d at 589, and not whether Plaintiff has in fact

met his burden. The Commissioner also contends that the ALJ's decision was consistent with the opinions of state agency medical consultants, and therefore supports the ALJ's finding that Plaintiff was not disabled under the Listings. However, the ALJ did not discuss these opinions in light of Listing 1.04A, and the court is thus unable to undergo substantial evidence review. Accordingly, on remand, the ALJ will be required to explain how the evidence of Plaintiff's spinal conditions relates to the requirements of Listing 1.04A.

The Commissioner also places much emphasis on the fact that Plaintiff chose not to have back surgery, including arguments that the ALJ was not required to discuss Listing 1.04A in light of that decision. The court finds the Commissioner's argument unpersuasive, especially given that the ALJ made no such relevant finding. The regulations provide that in order to obtain disability benefits, the claimant "must follow treatment prescribed by [his] physician if this treatment can restore [his] ability to work." 20 C.F.R. § 404.1530(a). When the claimant fails to follow prescribed treatment without a good reason, the Commissioner will not find the claimant disabled. Id. § 404.1530(b). The Commissioner will consider a claimant's "physical, mental, educational, and linguistic limitations (including any lack of facility with the English language) when determining if [a claimant has] an acceptable reason for failure to follow prescribed treatment." Id. § 404.1530(c). One example of a "good reason" for failing to follow prescribed treatment specifically provided in the regulations is where, due to its magnitude or unusual nature, the treatment poses a significant risk to the claimant. Id. § 404.1530(c)(4). Additionally, Social Security Ruling ("SSR") 82–59 provides:

> SSA may make a determination that an individual has failed to follow prescribed treatment only where all of the following conditions exist:
>
> 1. The evidence establishes that the individual's impairment precludes engaging in any substantial gainful activity (SGA) or, in the case of a disabled widow(er)

> that the impairment meets or equals the Listing of Impairments in Appendix 1 of Regulations No. 4, Subpart P; and
> 2. The impairment has lasted or is expected to last for 12 continuous months from onset of disability or is expected to result in death; and
> 3. Treatment which is clearly expected to restore capacity to engage in any SGA (or gainful activity, as appropriate) has been prescribed by a treating source; and
> 4. The evidence of record discloses that there has been refusal to follow prescribed treatment.
>
> Where SSA makes a determination of "failure," a determination must also be made as to whether or not failure to follow prescribed treatment is justifiable.
>
> ***
>
> Based on the evidence in file, SSA may decide that it appears that the claimant or beneficiary does not have a good reason for failing to follow treatment as prescribed by a treating source and that the treatment is expected to restore ability to engage in any SGA (or gainful activity, as appropriate). However, before a determination is made, the individual, or in the case of incapable individuals the person acting on their behalf, will be informed of this fact and of its effect on eligibility for benefits. The individual will be afforded an opportunity to undergo the prescribed treatment or to show justifiable cause for failing to do so.

SSR 82-59, 1982 WL 31384 at *1, 5. As to what constitutes "prescribed" treatment, courts have recognized that this generally means something more than a treatment measure recommended or suggested by a physician. Cahill v. Colvin, No. 12 CIV. 9445 PAE MHD, 2014 WL 7392895, at *25 (S.D.N.Y. Dec. 29, 2014) (citing Benedict v. Heckler, 593 F.Supp. 755, 759 (E.D.N.Y.1984); Schena v. Sec'y of Health & Human Serv., 635 F.2d 15 (1st Cir.1980); Cassiday v. Schweiker, 663 F.2d 745 (7th Cir. 1981); Jones v. Heckler, 702 F.2d 950 (11th Cir. 1983)).

Here, the record shows that Plaintiff was examined by Dr. Hayes on many occasions between October 2009 and June 2010. (Tr. 285-304). The course of treatment from Dr. Hayes and other doctors at Carolina Bone & Joint included physical therapy, epidural steroid injections,

pain medication, and chiropractic treatments. Id. In May 2010, Dr. Hayes wrote in the medical notes:

> I counseled [Mr. Myalik] that we have essentially reached the end of the conservative treatment program that if his symptoms are something he can live with then we can release him. On the other hand, if his symptoms are not something he can live with then he would need a referral to neurosurgeon for consideration for lumbar discectomy. He is nervous about having surgery and has concerns about the expected outcomes of that. He wants a little bit more time to see how he feels.

(Tr. 286). One month later, when Dr. Hayes saw Plaintiff for the last time, he noted Plaintiff's persistent symptoms from lumbar disc herniation at L4-L5 despite the above-described course of treatment and wrote:

> I counseled him that he has three choices; one of discontinuing his medication and returning back to work. Two, having the surgery and correcting his problem and retuning back to work. Three, continuing with his pain medication which may give him some difficulties returning back to work because of regulatory issues. At this point, he wishes to continue to take the pain medication, so he will be unable to return to work because of it. I counseled him that there is no more further treatment that I can offer him since he is not interested in surgery and that he is at maximum medical improvement.

(Tr. 285).

From these statements in the medical record, the Commissioner argues that claimant refused prescribed treatment and is therefore precluded from being found disabled under the regulations. The court disagrees. At most, the record supports a finding that surgery was recommended as an option, but not prescribed. "Recommendations, suggestions, and abstract opinions are not enough." Teter v. Heckler, 775 F.2d 1104, 1107 (10th Cir. 1985). Additionally, the court finds that the ALJ has not shown that back surgery would necessarily restore Plaintiff's ability to work, as required by 20 C.F.R. § 404.1530(a). See Fraley v. Sec'y of Health & Human Servs., 733 F.2d 437, 440 (6th Cir. 1984) ("While the medical evidence indicates that a hemilaminectomy would probably improve claimant's condition, the record is devoid of any

11

evidence that the proposed surgery would restore claimant's ability to work….It is not the claimant's burden to undergo any and all surgical procedures suggested by his physician lest he is barred from receiving disability benefits."). The court also finds the Commissioner's argument futile in light of the complete lack of evidence as to any attempt on the part of the Commissioner to follow the steps outlined in SSR 82-59, which describe how the Commissioner can determine whether an individual has failed to follow prescribed treatment. Finally, the court notes that spinal surgery is often invasive and dangerous and will not fault a claimant for being nervous about such a procedure and opting for more conservative treatment measures. See Ratliff v. Celebrezze, 338 F.2d 978, 981 (6th Cir. 1964); Schena v. Sec'y of Health & Human Servs., 635 F.2d 15, 20 (1st Cir. 1980); Morse v. Gardner, 272 F. Supp. 618, 628 (E.D. La. 1967) ("The Social Security Act is humanitarian legislation and we do not believe that it requires a sincere person who has a great fear to submit to an operation in an effort to diminish his impairment in order to have a disability period established.") (quoting Martin v. Ribicoff, 195 F.Supp. 761, 772 (E.D.Tenn. 1961)).

Nowhere in the record does it appear that Plaintiff outright refused a prescribed treatment of surgery. From a reading of the medical record and the transcript of the hearing before the ALJ, it appears that Plaintiff was reluctant to submit to spinal surgery. "But reluctance is not refusal." Hoover v. Celebrezze, 235 F. Supp. 147, 149 (W.D.N.C. 1964). Here, the court does not find Dr. Hayes' statements to Plaintiff offering spinal surgery as an option to be a "prescribed treatment" within the meaning of the regulations. The Commissioner's argument that Plaintiff is precluded from being found disabled under the regulations therefore fails. Accordingly, for the reasons explained herein, the court finds that Plaintiff's first assignment of error merits remand.

### E. Conclusion

The court has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is not supported by substantial evidence. See Richardson v. Perales, 402 U.S. 389 (1971); Hays v. Sullivan, 907 F.2d 1453 (4th Cir. 1990). Because the court finds that the ALJ failed to fully consider the medical evidence regarding Plaintiff's degenerative disc disease and other spinal conditions in light of the requirements of Listing 1.04A, the court will remand this matter to the Commissioner. Accordingly, Plaintiff's Motion for Summary Judgment will be granted, the Commissioner's Motion for Summary Judgment will be denied, and the decision of the Commissioner will remanded for a new hearing and further proceedings consistent with this Order. Though the court does not reach Plaintiff's other assignments of error, it will deny such assignments of error without prejudice as to reasserting such contentions if this matter again comes before this court.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

(1) Plaintiff's Motion for Summary Judgment (#8) is **GRANTED** based on the ALJ's failure to sufficiently address the evidence in light of Listing 1.04A, and the Commissioner's Motion for Summary Judgment (#17) is **DENIED without prejudice**;

(2) the decision of the Commissioner, denying the relief sought by Plaintiff, is **VACATED** and this action is **REMANDED** to the Commissioner, pursuant to Sentence Four of 42 U.S.C. § 405(g), for further proceedings consistent with this order; and

(3) this action is **DISMISSED**.

The Clerk of Court shall enter a Judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure consistent with this Memorandum of Decision and Order.

Signed: August 26, 2015

Max O. Cogburn Jr.
United States District Judge